IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Brionté McCorkle, Georgia Conservation Voters Education Fund, Inc.,** and **Georgia WAND Education Fund, Inc.**,<br><br>  Plaintiffs,<br><br> vs.<br><br>**Brad Raffensperger,** in his official capacity as Secretary of State of the State of Georgia,<br><br>  Defendant. | Case No. _____<br><br><br>**Plaintiffs' Motion for a Preliminary Injunction**<br><br>**Expedited Consideration Requested** |

Plaintiffs Brionté McCorkle, the Georgia Conservation Voters Education Fund, Inc., and the Georgia WAND Education Fund, Inc., (collectively, "McCorkle") respectfully move the Court for a preliminary injunction prohibiting the Georgia Secretary of State from enforcing House Bill 1312, a new Georgia law which revises the terms of office for members of Georgia's Public Service Commission ("PSC"), and requiring

him to call a special primary and general election to fill the seats of Commissioners from Districts 2, 3, and 5 as soon as practicable.

## Background[1]

Article IV, Section I, Paragraph 1(a) of the Georgia Constitution provides as follows:

> There shall be a Public Service Commission for the regulation of utilities which shall consist of five members who shall be elected by the people. The Commissioners in office on June 30, 1983, shall serve until December 31 after the general election at which the successor of each member is elected. Thereafter, all succeeding terms of members shall be for six years. Members shall serve until their successors are elected and qualified. A chairman shall be selected by the members of the commission from its membership.

The jurisdiction, powers, and duties of the PSC are prescribed by state law, and they include broad governmental authority to supervise and regulate common carriers, railroads, and public utilities. O.C.G.A. § 46-2-1 *et seq*. Among many other duties, the PSC regulates the rates that Georgians may be charged by electric, natural gas, and telephone companies.

---

[1] Unless otherwise noted, all facts come from McCorkle's verified complaint.

Prior to the enactment of House Bill 1312 in 2024, members of the PSC were elected at large by all Georgia voters in partisan elections to serve staggered six-year terms. O.C.G.A. § 46-2-1. Although elected at large, members of the PSC are required to reside in one of five districts prescribed by statute. *Id.*

The term of office for each current Commissioner before House Bill 1312 is set forth in Table 1.

**Table 1: PSC Terms of Office before House Bill 1312**

| District | Commissioner | Term Start | Term End |
|---|---|---|---|
| 1 | Jason Shaw | Jan. 1, 2021 | Dec. 31, 2026 |
| 2 | Tim Echols | Jan. 1, 2017 | Dec. 31, 2022 |
| 3 | Fitz Johnson | Jan. 1, 2019 | Dec. 31, 2024 |
| 4 | Bubba McDonald | Jan. 1, 2021 | Dec. 31, 2026 |
| 5 | Tricia Pridemore | Jan. 1, 2019 | Dec. 31, 2024 |

In 2020, four Black voters sued the Secretary of State in federal court alleging that the at-large method of electing members of Georgia's Public Service Commission violated the Voting Rights Act. *See* Complaint, *Rose v. Raffensperger*, 1:20-cv-2921-SDG (July 14, 2020) (ECF 1). After a week-long bench trial in June 2022, the district court ruled in the plaintiffs' favor and enjoined the Secretary of State from conducting any further elections for the Public Service Commission

using the at-large method of election. *See* Opinion and Order, *Rose v. Raffensperger*, 1:20-cv-2921-SDG (Aug. 5, 2022) (ECF 151).

As a result of the *Rose* injunction, the Secretary canceled the 2022 general election for the Public Service Commissioner from District 2 and the special general election for the Public Service Commissioner from District 3 to serve the remainder of Commissioner Eaton's original term. The injunction remained in place while the Secretary appealed the district court's judgment.

In November 2023, the Eleventh Circuit reversed the judgment of the district court, but the district court's injunction remained in place because a judge of the Eleventh Circuit withheld the issuance of the mandate. *See* Order, *Rose v. Raffensperger*, 1:20-cv-2921-SDG (Dec. 18, 2023) (ECF 179). With the injunction still in place at the beginning of the candidate-qualifying period in March 2024, the Secretary called off the 2024 elections for members of the PSC.

On April 16, 2024, the Eleventh Circuit *sua sponte* issued a stay of the district court's injunction in *Rose*. *See* Order, *Rose v. Raffensperger*, 1:20-cv-2921-SDG (April 16, 2024) (ECF 182). The *Rose* plaintiffs filed a

petition for a writ of certiorari in the United States Supreme Court, and that petition was denied on June 24, 2024.

On March 16, 2024, the Georgia General Assembly adopted House Bill 1312, which, among other things, revises the terms of office for members of Georgia's PSC. The Governor signed House Bill 1312 on April 18, 2024, and it became effective immediately. When the Governor signed it, House Bill 1312 became Act 380.

Section 2 of House Bill 1312 adds a new section to the Georgia Code that revises the terms of the current members of Georgia's PSC. It extends the terms of each current Commissioner by at least one year and shortens the terms of the next Commissioners elected from Districts 2 and 3. Table 2 sets forth the PSC terms as revised by House Bill 1312.

**Table 2: PSC Terms as Revised by House Bill 1312**

| District | Old Term End | New Term End | Next Term |
|---|---|---|---|
| 1 | Dec. 31, 2026 | Dec. 31, 2028 | 6 years |
| 2 | Dec. 31, 2022 | Dec. 31, 2025 | 5 years |
| 3 | Dec. 31, 2024 | Dec. 31, 2025 | 1 year |
| 4 | Dec. 31, 2026 | Dec. 31, 2028 | 6 years |
| 5 | Dec. 31, 2024 | Dec. 31, 2026 | 6 years |

## Legal Standard

A plaintiff seeking a preliminary injunction must demonstrate that: (1) there is a substantial likelihood of success on the merits; (2) it will suffer irreparable injury if relief is not granted; (3) the threatened injury outweighs any harm the requested relief would inflict on the non-moving party; and (4) entry of relief would serve the public interest. *See, e.g., Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

## Discussion

**I.  McCorkle is likely to succeed on the merits.**

It is now well-established that public officials violate the Due Process Clause if they disenfranchise voters in violation of state law. *Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1271 (11th Cir. 2020); *Duncan v. Poythress*, 657 F.2d 691, 704 (5th Cir. 1981).[2] The question, then, is whether House Bill 1312 violates state law.

---

[2] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

It does. House Bill 1312 violates Article IV, Section I, Paragraph 1(a) of the Georgia Constitution, which provides in relevant part that "all succeeding terms of [PSC] members shall be for six years." Ga. const. art. IV, § 1, ¶1(a). By extending the term of the current Commissioners by at least one year beyond the original six-year term and by shortening the subsequent term of the next Commissioners elected from District 2 and District 3, House Bill 1312 plainly violates the Georgia Constitution.

It is axiomatic, of course, that the Georgia General Assembly cannot amend the constitution by passing a statute. *E.g., Kemp v. Gonzalez*, 310 Ga. 104, 113 (2020) (citing cases). And the Georgia Supreme Court has already addressed this very question: the General Assembly cannot by statute change the term of a public official that is set out in the constitution. *Id.* Doing so, as the General Assembly has done here, violates the constitution. *Id.*

As a result, McCorkle is highly likely to succeed on the merits of her claim.

## II. McCorkle will suffer irreparable harm in the absence of a preliminary injunction.

Harm is irreparable for purposes of a preliminary injunction when "it cannot be undone through monetary means." *Deerfield Med. Ctr. v.*

*City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981). Harms that touch upon the constitutional and statutory rights of political parties, candidates, and voters are generally not compensable by money damages and are therefore considered irreparable. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *League of Women Voters v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986); *Ga. State Conference of the NAACP v. Fayette Cnty. Bd. of Comm'rs*, 118 F. Supp. 3d 1338, 1347 (N.D. Ga. 2015).

In this case, the irreparable nature of the injuries is obvious. House Bill 1312 deprives McCorkle of the opportunity to vote for Public Service Commissioners at the times otherwise provided by Georgia law, and that injury is not compensable by money damages. This *Winter* factor therefore weighs in favor of granting an injunction.

### III. The balance of harms favors McCorkle.

The third *Winter* factor requires the Court to consider the potential impact that the requested injunction might have upon the defendant, and to balance that potential with the considerable and irreparable harms that the plaintiff would suffer should her request be

8

denied. There is no question that the balance of equities tips in McCorkle's favor here.

McCorkle faces total disenfranchisement. She will be unable to vote for Public Service Commissioners as provided by law. But the Secretary will suffer no harm if he is forced to administer elections in accordance with the state constitution. This *Winter* factor weighs heavily in favor of an injunction.

## IV. An injunction would serve the public interest.

The public interest in this case is clear. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius,* 723 F.3d 1114, 1145 (10th Cir. 2013) (en banc) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1131–32 (10th Cir. 2012)), *aff'd* 134 S. Ct. 2751 (2014); *accord League of Women Voters of N.C.,* 769 F.3d at 247. The requested injunction will also ensure that Georgia voters will have an opportunity to vote for Public Service Commissioners in accordance with state law and sooner than they otherwise would have. The requested injunction, if granted, would therefore favor the public interest.

## Remedy

Georgia law can handle the remedy in this case. It already contains provisions that provide ample direction for what the Secretary must do if House Bill 1312 is enjoined. *See* O.C.G.A. §§ 21-2-504(a); 21-2-540; 21-2-541; 42-2-1(d); 46-2-4.

Table 3 sets forth a schedule for future PSC elections under existing Georgia law.

| Table 3: Schedule for PSC Elections under Existing Georgia Law | | | |
|---|---|---|---|
| District | Next Election | Election Type | Next Term |
| 1 | 2026 | General | 6 years |
| 2 | 2024/5 | Special | Remainder of 6-year term ending on Dec. 31, 2028 |
| 3 | 2024/5 | Special | Remainder of 6-year term ending on Dec. 31, 2030 |
| 4 | 2026 | General | 6 years |
| 5 | 2024/5 | Special | Remainder of 6-year term ending on Dec. 31, 2030 |

Under the schedule set out in Table 3, elections for Districts 1 and 4 would proceed as usual in 2026. Commissioners elected then would serve a full six-year term. *See* O.C.G.A. § 46-2-1(d).

Elections for Districts 2, 3, and 5 would be special elections because the general election at which those Commissioners should have been elected did not occur. *See* O.C.G.A. § 21-2-504(a). It is the duty of

10

the Secretary of State to call those elections. *Id.* Those elections would occur in late 2024 or early 2025 under O.C.G.A. §§ 21-2-540(b) and -541.[3] A special primary would be required. *See* O.C.G.A. §§ 21-2-540(a)(2) and 46-2-4. And the Commissioners elected then would serve out the remainder of the original term of office for their district "as measured by the Constitution." *Gonzalez*, 310 Ga. at 108-09.

## Conclusion

For the foregoing reasons, the Court should issue a preliminary injunction prohibiting the Secretary from enforcing House Bill 1312 in future elections and requiring him to call a special primary and general election to fill the seats of Commissioners from Districts 2, 3, and 5 as soon as practicable.

---

[3] Depending on when an injunction issues, it may be possible to hold a special primary or a special general election in conjunction with the 2024 general election or general runoff elections. Otherwise, elections could occur in early 2025.

Respectfully submitted this 17th day of July, 2024.

**/s/ Bryan L. Sells**
Bryan L. Sells
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212 (voice/fax)
bryan@bryansellslaw.com


**/s/ Lester Tate**
Samuel Lester Tate, III
Georgia Bar No. 698835
Akin & Tate, PC
Post Office Box 878
11 South Public Square
Cartersville, Georgia 30120
(770) 382-0780
lester@akin-tate.com


*Attorneys for the Plaintiffs*

## Certificate Of Compliance

I hereby certify that the forgoing document was prepared in 13-point Century Schoolbook in compliance with Local Rules 5.1(C) and 7.1(D).


**/s/ Bryan L. Sells**
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212 (voice/fax)
bryan@bryansellslaw.com