# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| BRIONTÉ McCORKLE, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia, <br><br> *Defendant*. | Civil Action No. 1:24-cv-03137-WMR |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## INTRODUCTION

Members of the Georgia Public Service Commission (PSC) have been elected statewide using staggered terms for decades. In 2020, Plaintiff McCorkle sought to put a stop to that system, ultimately persuading the district court the statewide election system for PSC did not provide an equal opportunity for Black voters. The district court then cancelled the 2022 and 2024 PSC elections. But the Eleventh Circuit later reversed the district court because there was no violation of federal law in Georgia's method of election for PSC. To solve the problem of cancelled elections, the legislature passed a new statute, HB 1312, to re-stagger the PSC elections over several election cycles.

Plaintiff McCorkle doesn't like the legislative solution to the problem she created. This lawsuit seeks to take Georgia's win in Plaintiff McCorkle's first case and force a result where Georgia would still lose by being required to surrender its strong state interest in staggered terms for PSC. Those terms are specifically designed to avoid having a majority of the members up for election in the same year. But there is no basis for this Court to even hear this case, let alone impose Plaintiff McCorkle's preferred election schedule.

First, Plaintiffs have no standing to bring this case or seek relief. As Plaintiffs admit, Georgia PSC elections are statewide elections in which any eligible elector in Georgia may vote. *See, e.g.*, [Doc. 1, ¶ 11] ("members of the Public Service

1

Commission [are] elected at large by all Georgia voters…"). As a result, Plaintiff McCorkle is in no different position than any other voter, making her complaint a generalized grievance that cannot be heard by this Court. And the organizational plaintiffs never allege any injury.

Second, this Court should dismiss this case because it fails to state a claim. Plaintiffs present a solely state-law claim masquerading as a federal claim. If Plaintiffs believe there is a violation of state law or the state constitution, their remedy is not in federal court. Critically, Plaintiffs are not deprived of their ability to vote for any position—they just wish they could vote for certain positions at different times. That is not a federal constitutional violation. And even if there was a substantive due process claim on these facts, HB 1312 still complies with the state constitution, ending Plaintiffs' case.

Over the Secretary's objections, a federal court cancelled multiple statewide elections on a basis the Eleventh Circuit has now invalidated. To clean up that unprecedented situation, the legislature took carefully considered steps taking all relevant state interests into account, including the interests of Georgia voters. But as she has done before, Plaintiff McCorkle again seeks to disrupt the orderly administration of the PSC, including the election of its members. This Court should not further interfere with the state's exercise of its constitutional authority

to determine the "manner and time of election of members of the commission," Ga. Const. Art. IV, § 1, Para. 1(c), and should dismiss the Complaint.

## FACTUAL BACKGROUND[1]

### I. Procedural background of *Rose* case.

Understanding what led to the cancellation of the 2022 and 2024 PSC elections will assist the Court with the context of this case, because Plaintiff McCorkle is part of both cases. Since the beginning of *Rose v. Raffensperger*, Case No. 1:20-CV-02921-SDG, in 2020, the Secretary consistently raised the issue that there was no violation of the Voting Rights Act (VRA) because the plaintiffs in that case did not present the required element of a proper remedy. *Rose* Docs. 22-1, 80-1, 143. Following a trial on the merits, the Court found on August 5, 2022, that the statewide method of election for PSC violated Section 2 of the Voting Rights Act (VRA). *Rose* Doc. 151 at 35, 56–60. That order also cancelled the 2022 elections for PSC and all upcoming elections for PSC using a statewide method of election. *Id.* at 63. Following that order, the Secretary appealed. *Rose* Doc. 152.

---

[1] Because this Motion to Dismiss is filed contemporaneously with the Secretary's Response to Plaintiffs Motion for Preliminary Injunction, there will be some overlap in the factual sections of the two briefs. For purposes of this motion, the facts are limited to the Complaint and other information in the public record. This Court "may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion." *Halmos v. Bomardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) (citations omitted).

After filing the appeal, the Secretary sought a stay of the post-trial order in an effort to allow the 2022 general election to proceed but did not do so based on the *Purcell* Principle.[2] After the Eleventh Circuit granted a stay based on *Purcell* only, *Rose v. Sec'y of State of Georgia*, No. 22-12593, 2022 WL 3572823 at *6 (11th Cir. Aug. 12, 2022), the U.S. Supreme Court reversed, *Rose v. Raffensperger*, 143 S. Ct. 58 (2022), recognizing the Eleventh Circuit had granted the stay based on grounds not sought by the Secretary. By the time the Supreme Court order issued, the Secretary arrived at the deadline for removing the PSC contests from the 2022 general-election ballot and ceased efforts to stay the cancellation of the 2022 PSC elections despite the Eleventh Circuit's invitation to re-apply for a stay. *See Rose v. Raffensperger*, 87 F.4th 469, 478–79 (11th Cir. 2023). Consistent with the *Rose* post-trial order, the 2022 PSC general elections were removed from the ballot and did not occur.

The Eleventh Circuit reversed the *Rose* court's post-trial order in November 2023. *Rose*, 87 F.4th at 469. Following that decision, Plaintiffs petitioned for a writ

---

[2] The *Purcell* Principle applies additional elements to a request for a stay involving elections and requires district courts to not enjoin state election laws close to an election. *See League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1371 (11th Cir. 2022). Because cancelling the PSC elections was less disruptive than other potential changes to the election process, the Secretary had agreed in *Rose* that the *Purcell* Principle did not apply to cancelling the 2022 general elections for PSC if a decision was reached after the trial by a date certain. *Rose* Docs. 151 at 61–63, 112 at 9–10.

4

of certiorari from the U.S. Supreme Court to review the Eleventh Circuit's decision on the merits. *See Rose v. Raffensperger*, No. 23-1060, 2024 WL 3089563, at *1 (U.S. June 24, 2024). At nearly the same time, a judge on the Eleventh Circuit withheld issuance of that court's mandate, so the district court's post-trial injunction against holding PSC elections remained in place. *Rose* 11th Cir. Docs. 64, 65. The Eleventh Circuit later *sua sponte* lifted the district court injunction on April 16, 2024. *Rose* 11th Cir. Doc. 68. The U.S. Supreme Court ultimately denied Plaintiffs' petition for certiorari. *Rose*, 2024 WL 3089563, at *1. After the Eleventh Circuit denied a request for rehearing en banc, the mandate finally issued to the district court. *Rose v. Sec'y of State of Ga.*, __ F.4th __, No. 22-12593, 2024 U.S. App. LEXIS 16841, at *2 (11th Cir. July 10, 2024); *Rose* 11th Cir. Doc. 74. On July 22, 2024, the district court made the mandate of the Eleventh Circuit its judgment. *Rose* Doc. 193. Plaintiffs filed this case days after the mandate issued from the Eleventh Circuit. [Doc. 1].

II.     **Election processes and the legislative changes.**

While the court process was moving forward, the state acted in response to the various court orders. As the beginning of the 2024 election process approached, the *Rose* court's injunction prohibiting elections for PSC remained in place. Qualifying for statewide offices took place on March 4–8, 2024 and did not include any PSC races because the post-trial injunction remained in effect. *See* O.C.G.A. § 21-2-132(d); [Doc. 1, ¶ 23]. By the time the Eleventh Circuit lifted the stay on April

16, 2024, 11th Cir. Doc. 68, primary ballots had already gone out to overseas voters (O.C.G.A. § 21-2-384(a)) and domestic voters (O.C.G.A. § 21-2-384(a)(2)) and early voting for the general primary was set to begin in fewer than two weeks. O.C.G.A. § 21-2-385(d)(1).

Recognizing the Eleventh Circuit's November order and the timeline for qualifying for the 2024 cycle, the Georgia General Assembly passed legislation during its 2024 regular legislative session setting a new schedule to re-stagger PSC elections and ensure the state's policies of statewide and staggered elections are followed. *See* 2024 Ga. Laws Act 380 (HB 1312) (portions codified at O.C.G.A. § 46-2-1.1) [Doc. 1-1]; *see also* [Doc. 1, ¶¶ 26–34].

The nub of Plaintiffs' Complaint is that they disagree with this legislatively chosen approach. Specifically, they claim the schedule set forth in "House Bill 1312 violates the Georgia Constitution by revising the terms of office for members of Georgia's Public Service Commission," which Plaintiffs claim violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. [Doc. 1, ¶ 35]. But they do not propose a schedule that solves the purported issue they have identified. Instead, they just ask this Court to "enjoin the defendant from failing to conduct elections for the Public Service Commission in accordance with Georgia law." *Id.* at 10. But even by their own interpretation of the Georgia Constitution, such a "follow the law" injunction would not remedy the purported

constitutional violation because elections would nevertheless be carried out *outside* the window Plaintiffs claim is required by the Georgia Constitution as a result of the reversed injunction cancelling the 2022 and 2024 elections.

**ARGUMENT AND CITATION OF AUTHORITY**

Plaintiffs do not have standing to bring this action in federal court. Although there are two organizational plaintiffs currently in the case, the Complaint does not allege either of them have suffered an injury related to HB 1312. Thus, Plaintiff McCorkle is the only party even attempting to establish standing. But her efforts fall far short. And even if she had standing to invoke this Court's jurisdiction, Plaintiffs have failed to state a claim because the Complaint exclusively challenges state law which does not create a federal question. Finally, if this Court wishes to press on, the Complaint should be dismissed for failure to state a claim upon which relief may be granted because there is no violation of state law.

**I. This Court lacks jurisdiction to hear Plaintiffs' case.**

"Federal courts are not 'constituted as free-wheeling enforcers of the Constitution and laws.'" *Wood v. Raffensperger*, 981 F.3d 1307, 1313 (11th Cir. 2020), (quoting *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (en banc)). Instead, "[t]he Constitution makes clear that federal courts are courts of limited jurisdiction…" *Id.* at 1310 (citing U.S. Const. art. III). To apply this standard, federal courts require that plaintiffs demonstrate "(1) an injury in fact

7

that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision.'" *Id.* at 1314 (quoting *Jacobson v. Fla. Sec'y of State,* 974 F.3d 1236, 1245 (11th Cir. 2020)). The Complaint fails to satisfy even the first element of this standard because "the impact on [Plaintiffs] is plainly undifferentiated and common to all members of the public." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 575 (1992) (quoting *United States v. Richardson,* 418 U.S. 166, 176–77 (1974) (internal alterations and quotations omitted)). Moreover, even if the Complaint adequately alleged an injury in fact, the relief requested is not likely to redress the purported harm.

A. **The organizational plaintiffs make no allegations of an injury.**

There are three plaintiffs listed in the complaint: Plaintiff McCorkle and two organizations. [Doc. 1, ¶¶ 5–7]. But neither organization even attempts to assert any injury causally related to the Secretary. In their Complaint, Plaintiff Georgia Conservation Voters Education Fund, Inc. states its mission and adds that its "work involves the Public Service Commission." *Id*. at ¶ 6. Plaintiff Georgia WAND Education Fund, Inc. does the same thing. *Id*. at ¶ 7.

Neither organization alleges it has members who are injured and neither organization alleges it is suffering any injury to itself or on behalf of anyone else. Without allegations of any injury, the two organizations have failed to properly invoke this Court's jurisdiction and should be dismissed. *Jacobson,* 974 F.3d at 1245.

### B. Plaintiff McCorkle alleges only a generalized grievance, which is not sufficiently particularized to establish an injury.

The sole individual Plaintiff fares no better: Plaintiff McCorkle has failed to allege she has been injured in a particularized way, which itself ends the injury inquiry. An injury in fact is "an invasion of a legally protected interest that is both concrete and particularized…" *Trichell v. Midland Credit Mgmt.*, Inc., 964 F.3d 990, 996 (11th Cir. 2020). And "[a] particularized injury is one that 'affect[s] the plaintiff in a personal and individual way.'" *Wood*, 981 F.3d at 1314 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). But "[a]n injury to the right 'to require that the government be administered according to the law' is a generalized grievance.'" *Id.* (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1205–06 (11th Cir. 1989)). A voter coming to this Court asking it to require the Secretary of State to hold an election based on their interpretation of a state constitutional provision is precisely such a generalized grievance.

That is not enough to invoke this Court's jurisdiction because "a generalized grievance, 'no matter how sincere,' cannot support standing." *Id.* (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013)). Plaintiff McCorkle "may *care* more about it; [s]he may be a more ardent proponent of constitutional regularity or of the necessity of the governmental act that has been wrongfully omitted. But that does not establish that [s]he has been harmed distinctively…" Antonin Scalia, *The*

*Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 894 (1983) (emphasis original).

This Court has been presented with—and declined to hear—these kinds of broad claims from voters before. In *Wood*, an individual voter came to federal court seeking relief from an election already carried out. 981 F.3d at 1311. He sued in his capacity as a private citizen claiming that conduct of the Secretary of State violated state law and provisions of federal law including the Due Process Clause of the Fourteenth Amendment. *Id.* at 1311–12. But both the district court and the Eleventh Circuit found that individual's injury wanting.

The Eleventh Circuit, for example, began by noting the general principle that the Constitution forbids federal courts from entertaining "garden variety" election issues "that may properly be filed in state courts." *Id.* at 1310. "Wood had the choice to sue in state or federal court." *Id.* at 1313. And "[w]hen someone sues in federal court, he bears the burden of proving his suit falls within [its] jurisdiction." *Id.* Wood failed this basic requirement. Instead of properly alleging an injury under the Article III standard, he put forth only a generalized grievance, which was "undifferentiated and common to all members of the public." *Id.* at 1314 (quoting *Lujan*, 504 U.S. at 575). Ultimately, the court held that "Wood cannot explain how his interest in compliance with state election laws is different from that of any other person." *Id.* In other words, "no single voter [was] specifically

disadvantaged" by the purported injury set forth in his claim. *Id.* (quoting *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336 (3rd Cir. 2020)). That was enough to defeat Wood's claim of standing and it is no different than what Plaintiff McCorkle alleges here, even admitting that PSC elections are by "all Georgia voters." [Doc. 1, ¶ 11].

Of course, "[t]he fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance." *Spokeo*, 578 U.S. at 339 n.7 (2016). Referencing hypothetical victims of a mass tort, for example, the Supreme Court has noted that injuries can be "widely shared [provided] each individual suffers a *particularized* harm." *Id.* (emphasis added). But the injury allegedly suffered here is not simply suffered by a "large class" of people. To the extent an injury exists, it is ubiquitous. Thus, the "litigant [is] 'raising only a generally available grievance about government—claiming only harm to [her] and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits [her] than it does the public at large.'" *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (quoting *Lujan,* 504 U.S. at 573–74). And that "does not state an Article III case or controversy." *Id.*

Applying this law to Plaintiff McCorkle's claim shows a remarkably similar course to the plaintiff in *Wood*. The Complaint "allege[es] that House Bill 1312

violates the Georgia Constitution and thereby deprives them of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution." [Doc. 1, ¶ 2]. But this alleged injury is shared equally by every eligible voter in Georgia. Plaintiff McCorkle does not claim to be a candidate. She does not claim that her vote will be weighed any differently. And she does not explain how her "interest in compliance with state election laws is different from that of any other person." *Wood*, 981 F.3d at 1314. Indeed, her entire complaint about the government's actions is "undifferentiated and common to all members of the public." *Lujan*, 504 U.S. at 575. Accordingly, this Court lacks jurisdiction to hear Plaintiff McCorkle's claim because she has no particularized injury and it should dismiss Plaintiffs' case on that basis alone.

**C. Even if Plaintiffs adequately alleged a particularized injury, they have no standing because the relief they seek does not redress that purported injury.**

Plaintiffs' standing problem goes beyond failing to adequately allege an injury in fact. The Complaint also suffers from a redressability problem. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). And to show redressability, "the plaintiff must show that it is likely, not merely speculative, that a favorable judgment will redress her injury." *Lewis v. Governor of Alabama*, 944 F.3d 1287, 1296

(11th Cir. 2019) (en banc). Due to the unique circumstances of this case, the relief sought in the Complaint cannot remedy the harm alleged.

Plaintiffs' sole claim is that "House Bill 1312 violates the Georgia Constitution by revising the terms of office for members of Georgia's Public Service Commission." [Doc. 1, ¶ 35]. And they seek to have this Court enter an injunction against the Secretary so that he does not enforce HB 1312 and that he generally follows their view of the law.³ But even if Plaintiffs received this relief, it would not remedy their claim. Indeed, Plaintiffs recognize that the election for District 2 is already outside the six-year term specified in the Georgia Constitution. [Doc. 1, ¶ 14]. And Districts 3⁴ and 5 are less than four months from being similarly beyond a six-year term. *Id.* at ¶¶ 15, 17. If the Court enjoined the election schedule under HB 1312, elections for these districts *would continue* to result in terms that

---

³ Plaintiff also seeks a declaratory judgment stating HB 1312 violates the United States Constitution and an award of fees. As to the declaratory judgment, this Court cannot provide any relief to Plaintiffs for the same reason they fail to establish an injury. "No federal court… has jurisdiction to pronounce any statute, either of a State or of the United States, void, because irreconcilable with the Constitution, *except as it is called upon to adjudge the legal rights of litigants in actual controversies.*" *Golden v. Zwickler*, 394 U.S. 103, 110 (1969) (internal quotations omitted) (emphasis original). And the "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim…" *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990).
⁴ Plaintiffs' approach oversimplifies the issue because District 3's enjoined election in 2022 was a special election for the remainder of the unexpired term of the former Commissioner, whom Commissioner Johnson was appointed to replace.

13

exceeded six years. Thus, to the extent Plaintiffs are correct that HB 1312 violates the U.S. Constitution by ordering elections that are outside the confines of a commissioner's six-year term of office (which they are not and this is a barely colorable argument on its face), then so would the relief they ask this Court to order. And that kind of extra-constitutional relief from this Court would not remedy the purported constitutional violation described in the Complaint.

### II. Plaintiffs have failed to state a claim because the only count in their Complaint is not a federal claim.

While styled as a substantive due process claim, Plaintiffs' Complaint alleges that the provisions of HB 1312 setting a schedule of elections violates the *Georgia* Constitution. [Doc. 1, ¶ 35]. But this kind of purely state law claim, which involves an interpretation of the Georgia Constitution, is not appropriate for federal court adjudication. Indeed, while Plaintiffs briefly mention the Fourteenth Amendment, the crux of the Complaint is a state actor's purported violation of the state Constitution. And "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

Plaintiffs point to the Due Process Clause of the Fourteenth Amendment in a vain attempt to make a federal case out of their fundamentally state law claim. [Doc. 1, ¶ 35]. And to be sure, the Eleventh Circuit has recognized that a federal

due process claim under the Fourteenth Amendment can arise from "the *disenfranchisement* of a state electorate in violation of state election law." *Duncan v. Poythress*, 657 F.2d 691, 699 (5th Cir. 1981) (emphasis added). But there is no federal due process violation for "garden variety" claims related to the administrative details of an election that do not result in patent and fundamental unfairness. *See Curry v. Baker*, 802 F.2d 1302, 1315 (11th Cir. 1986). At the same time, "there is no single, bright line to distinguish" when a federal court should intervene in a state election process under substantive due process. *Duncan*, 657 F.2d at 703; *see also Bonas v. Town of N. Smithfield*, 265 F.3d 69, 74 (1st Cir. 2001) ("It is our task, then, to separate wheat from chaff, and to determine whether this case fits into one of the isthmian exceptions to this general rule of non-intervention.").

Of course, when dealing with substantive due process, the "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). But regardless of the standard applied, this case does not rise to the level of a federal constitutional violation. Unlike *Duncan*, this is not a situation where state "public officials [] disenfranchise[d] voters in violation of state law so that they may fill the seats of government through the power of appointment." 657 F.2d at 704. Nor is it a situation of a "total and complete disenfranchisement of the electorate as a whole." *Bonas*, 265 F.3d at 75. Instead, it is a situation where state public officials are

15

attempting to *remedy* the disenfranchising effects of the erroneous cancellation of the 2022 and 2024 elections by a federal court that was demanded by one of *these Plaintiffs*. It makes little sense for this Court to further "intru[de] on state sovereignty" when it was a federal court intrusion that got us here in the first place. *Pennhurst*, 465 U.S. at 106.

As a result, Plaintiffs' Complaint does not allege any fundamental unfairness in Georgia elections. It addresses a state's chosen remedy to a federal court's misbegotten involvement in that election process. And under these circumstances, that cannot rise to the level of a substantive due process violation.

**III. Even assuming some sort of viable substantive due process claim existed on these facts, Plaintiffs have failed to state a claim upon which relief may granted because HB 1312 does not violate the Georgia Constitution.**

Even if this Court concludes that Plaintiffs have adequately pleaded some sort of substantive due process claim, a plaintiff's "legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted). And because HB 1312 does not, as a matter of law, violate the Georgia Constitution, it follows that it does not violate the United States Constitution and Plaintiffs have failed to state a claim upon which relief may be granted.

To avoid duplication, the Secretary incorporates all of his arguments from the response to the motion for preliminary injunction on the likelihood of success

on the merits, Argument Section II. For each of the reasons Plaintiffs are unlikely to succeed on the preliminary injunction they seek, Plaintiffs have likewise failed to state a claim for a violation of substantive due process through the allegations in their Complaint.

## CONCLUSION

After the cancellation of the 2022 and 2024 elections for PSC, the Georgia General Assembly acted to protect the important state interests of staggered terms and not having a majority of the PSC on the ballot at the same time. Plaintiffs challenge fails to establish standing because they have not alleged any particularized injury nor have they put forth a remedy that would "likely" redress the harm about which they complain. But even if they had, Plaintiffs have failed to state a claim upon which relief may be granted because HB 1312 does not violate the Georgia Constitution. And as a result, there can be no violation of the United States Constitution. This Court should dismiss this case.

Respectfully submitted this 12th day of August, 2024.

          Christopher M. Carr
          Attorney General
          Georgia Bar No. 112505
          Bryan K. Webb
          Deputy Attorney General
          Georgia Bar No. 743580
          Elizabeth T. Young
          Senior Assistant Attorney General

Georgia Bar No. 707725
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Bryan P. Tyson*
Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@theelectionlawyers.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@theelectionlawyers.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@theelectionlawyers.com
**The Election Law Group**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
678.336.7249 (phone)

*Counsel for Defendant Secretary of State Brad Raffensperger*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned certifies that the foregoing Brief has been prepared in Book Antiqua 13, a font and type selection approved by the Court in L.R. 5.1(B).

<u>/s/ Bryan P. Tyson</u><br>
Bryan P. Tyson