# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| BRIONTÉ McCORKLE, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia,<br><br>*Defendant*. | Civil Action No. 1:24-cv-03137-WMR |

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

INTRODUCTION

Plaintiffs' Response demonstrates that there is no issue, claim, or fact that requires this Court to entertain this unnecessary case any further. Plaintiffs have no answer to their standing problem because they continue to plead only a generalized grievance that is insufficient to invoke this Court's jurisdiction under Article III. And even if they had adequately alleged a particularized injury, the relief Plaintiffs request would not redress their alleged harm. On the merits, they cannot identify a federal claim that may be properly considered by this Court. And Plaintiffs' parting shot that the Secretary "misstates the facts" in his motion amounts to hairsplitting in an apparent attempt to muddy the waters just enough to survive dismissal. This Court should grant the Secretary's Motion to Dismiss.

**ARGUMENT AND CITATION OF AUTHORITY**

**I.  Plaintiffs' Response demonstrates that Plaintiffs have not adequately alleged standing.**

Plaintiffs incorrectly claim the Secretary conceded "that McCorkle alleges the loss of her right to vote in elections for members of the Public Service Commission that would have occurred but not for the Secretary's administration of the unconstitutional House Bill 1312." [Doc. 14 at 2] (citing [Doc. 12-1 at 9]). But the Secretary made no such concession. To the contrary, Plaintiff McCorkle has *not* lost her right to vote as a result of HB 1312, nor by any implementation of that law. HB 1312, now codified at O.C.G.A. § 46-2-1.1, *scheduled* elections for several of

Public Service Commissioners that otherwise were not slated to occur given this Court's prior orders. Plaintiffs' alleged injury is related not to the *ability* to vote but rather to the precise *timing* of the election. And that is firmly within the constitutional purview of the General Assembly. *See, e.g.*, Ga. Const. Art. IV, § I, Para. I(c) (The "manner and time of election of members of the [Public Service C]ommission shall be as provided by law"). Moreover, while "*missing* the opportunity to vote is an irreparable harm," *Jones v. Governor of Fla.*, 950 F. 3d 795, 828 (11th Cir. 2020) (emphasis added), disagreeing with the *timing* of an election is not a loss of the right to vote. This is particularly true where, as here, the legislature passed the law at issue to remedy a federal court injunction that disrupted the State's schedule of staggered PSC elections.

Plaintiffs cannot identify any election for PSC in which Plaintiff McCorkle otherwise would be able to vote in the absence of HB 1312. That is precisely why they offer their own proposed schedule of elections, which presumably occur on a timeframe Plaintiffs would prefer. But this proposed schedule would not remedy the alleged harm identified by Plaintiffs. Accordingly, they have neither alleged an Article III injury nor identified a remedy that could redress such an injury.

**A.       Plaintiff McCorkle's alleged injury is a generalized grievance.**

Plaintiffs' Response fails to cite to a single case where an average voter had standing in their own right in federal court to challenge a state's administration of

elections. Instead, they cling to the unremarkable proposition that "a person's right to vote is individual and personal in nature," and that "voters who allege facts showing disadvantage to themselves as individuals have standing to sue." [Doc. 14 at 3] (quoting *Gill v. Whitford,* 585 U.S. 48, 65–66 (2018)). But these general statements regarding the nature of the right to vote do not establish a voter's standing to sue in federal court for anything about which they disagree. To the contrary, that case emphasizes the need for a plaintiff to allege a particularized injury "showing disadvantage *to themselves as individuals*…" *Id.* (emphasis added). And Plaintiffs have not done that here.

If the inherent "individual and personal" nature of a person's right to vote was alone enough to create an injury-in-fact for purposes of Article III, then voters would *always* have standing to challenge any voting laws with which they disagree. That is not the law and none of the cases relied upon by Plaintiffs endorse such a sweeping rule. In fact, the Supreme Court in *Gill* found the plaintiffs *did not* have standing in part because they relied on a theory of "statewide harm" resulting from the partisan gerrymandering they challenged. 585 U.S. at 68. And even though that statewide injury was limited to members of the Democratic party—thus making it perhaps more particularized than the injury alleged here— the Supreme Court nevertheless relegated the allegations to "the kind of undifferentiated, generalized grievance about the conduct of government that we

4

have refused to countenance in the past." *Id.* (quoting *Lance v. Coffman,* 549 U.S. 437, 442 (2007)). Plaintiffs do not offer anything to show that their alleged injury is anything other than something that is "undifferentiated and common to all members of the public." *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 575 (1992)).

Recognizing this weakness, Plaintiffs turn to *Gonzalez v. Kemp*, 470 F. Supp. 3d 1343 (N.D. Ga. 2020), to support their theory of injury. [Doc. 14 at 3]. They contend that the allegations here are "precisely the injury alleged by the plaintiffs in *Gonzalez,* who were denied the right to vote for the office of district attorney…" *Id*. (citing *Gonzalez,* 470 F. Supp. 3d at 1346). But Plaintiffs place far too much reliance on *Gonzalez* to support their claim of standing because standing was not questioned by the defendants in that action. *Gonzalez,* 470 F. Supp. 3d at 1346, n.4.

While the court in *Gonzalez* only relied on voter standing, *id.*, there was a major distinction between that case and this one because the principal plaintiff there was a *candidate* for office. *See id.* at 1345 (noting Gonzalez attempted to qualify for the office). Her injury was thus distinct from that of the broader electorate, including her co-plaintiffs, because the Secretary's interpretation of the challenged law cancelled an otherwise forthcoming election and resulted in her own "unsuccessful[] attempt[] to qualify for the November election…" *Gonzalez v.*

*Governor of Georgia*, 978 F.3d 1266, 1268 (11th Cir. 2020). Thus, the alleged injury in that case was both concrete and particularized to the *candidate* bringing the action.[1]

Ultimately, the cases relied upon by Plaintiffs in their Response provide no basis to establish standing here. Plaintiff McCorkle is bringing this suit in her capacity as an individual voter, a status she shares with every other eligible elector in the state of Georgia. She has failed to allege an injury "showing disadvantage to [herself] as [an] individual[]." *Gill*, 585 U.S. at 65–66. Her harm is not particularized. And she cannot seek relief in this Court.

### B. The organizational plaintiffs do not allege any injury.

The organizational plaintiffs in this case apparently realize they do not allege any injury, because they rely entirely on the ability of Plaintiff McCorkle to establish her own standing to be part of this case. *See* [Doc. 14 at 4–5] ("In multiple-plaintiff cases like this one, though, as long as at least one plaintiff has standing, the court 'need not consider whether the other… plaintiffs have standing to maintain the suit.'"). For reasons already discussed, Plaintiff McCorkle does not have standing. As a result, neither do the organizational plaintiffs.

---

[1] The Eleventh Circuit did not reach that question because it did not consider the question of standing, but instead rooted its irreparable injury analysis for a preliminary injunction in voter standing. *See Gonzalez*, 978 F.3d at 1272.

### C. Plaintiffs' requested relief would not redress the alleged constitutional violation that forms the basis of Plaintiffs' purported injury.

Even if Plaintiffs could manufacture an injury, they cannot fix their redressability problem. "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill*, 585 U.S. at 73. The Secretary's opening brief explained that the remedy the Plaintiffs seek would not redress the purported harm of having elections carried out beyond the timeline Plaintiffs claim the Georgia Constitution requires. [Doc. 12-1 at 13–15]. Plaintiffs' only response is to brush this aside by arguing that the Secretary simply "misconceives McCorkle's injury," and that in any event the Secretary's position is "foreclosed by *Gonzalez*." [Doc. 14 at 5]. But they are wrong on both points.

First, the Complaint summarizes McCorkle's purported injury as follows:

> House Bill 1312 violates the Georgia Constitution by *revising the terms of office* for members of Georgia's Public Service Commission, and it thereby violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983.

[Doc. 1, ¶ 35] (emphasis added). This speaks not of the loss of a plaintiff's right to vote, but of the terms of office for commissioners. Taking the Complaint as true, the relief requested by Plaintiffs does not remedy their purported injury because the elections would still occur outside what they say is the constitutionally required period. That means nothing this Court could order would cure what

Plaintiffs believe is the constitutional deficiency contained in HB 1312. And *Gonzalez* only further supports the Secretary's position.

In *Gonzalez,* the Secretary interpreted the challenged law as requiring him to cancel an election *that was otherwise scheduled to go forward*. 978 F.3d at 1270. The district court found this interpretation was substantially likely to violate the Georgia Constitution. *Gonzalez,* 470 F. Supp. at 1350. So when the district court preliminarily enjoined the Secretary from enforcing the challenged law, the election schedule reverted to the schedule previously in place apart from the challenged law. That meant the election for district attorney could proceed on the timeline set forth in the Georgia Constitution, which required it occur during "the general election held immediately preceding the expiration of [the incumbents'] respective terms." Ga. Const. Art. VI, § VIII, ¶ I.

In other words, the district court in *Gonzalez* did not impose a new schedule for the election, setting it to occur "sooner than it would have taken place under the unconstitutional statute," which is what Plaintiffs request here. [Doc. 14 at 5]. Rather, as explained by the Eleventh Circuit, the district court simply "enjoined the State from enforcing 'the portion of O.C.G.A.§ 45-5-3.2 that would prevent an election for District Attorney for the Western Judicial Circuit on November 3, 2020.'" *Gonzalez*, 978 F.3d at 1270. And this distinction matters because a similar

injunction here would *not* produce an election that matches Plaintiffs' reading of the Georgia Constitution.

Here, unlike in *Gonzalez,* there is no election scheduled by operation of law that could simply be restarted by the Secretary if this Court entered an injunction prohibiting the enforcement of HB 1312—because there are no vacancies in any PSC position. Thus, Plaintiffs request far more than what the *Gonzalez* plaintiffs sought. And the new schedule they seek to implement misconceives the scope of this Court's power. "The power of judicial review is more limited: It permits a court to decline to enforce a statute in a particular case or controversy, and it permits a court to enjoin executive officials from taking steps to enforce a statute…" Jonathan F. Mitchell, *The Writ-Of-Erasure Fallacy,* 104 Va. L. Rev. 933, 936 (2018), *see also, id.* at n. 5 (collecting cases). An injunction preventing the Secretary from implementing HB 1312 would not automatically result in a more expeditious PSC election schedule. It would simply restart the turmoil brought on by the original injunction that put these elections on hold in the first place—which the State sought to resolve in HB 1312, balancing the timeline in a way that the General Assembly found is fair to candidates and voters, meets the clear state interest in staggered terms, and is reasonably practicable for election officials.

Again, the reason there are no scheduled elections that could occur by operation of law in the same way as in *Gonzalez* is because a federal court

interfered with the statutory timelines put forward by the General Assembly. *See, e.g.,* O.C.G.A. § 46-1-1.1(a). Plaintiffs' reliance on cases where "Georgia *state officials* delayed or denied elections to which voters were entitled under state law," is misplaced. [Doc. 14 at 6] (emphasis added). In those cases, the courts directed the Secretary to reinstate the elections that were passed over or cancelled by unilateral state action. But that is not the case here, where the Secretary and General Assembly are seeking to remedy a harm that occurred outside the control of state officials and is ultimately of Plaintiff McCorkle's own making. *See, e.g.,* O.C.G.A. § 46-1-1.1(a). And because Plaintiffs' proposed relief would do nothing to avoid what they say is an extra-constitutional timeline set forth in HB 1312, they have not established redressability pursuant to Article III. For this reason, Plaintiffs independently lack standing to bring this case.

II. **Plaintiffs have not adequately alleged a federal claim for this Court to consider.**

Even if Plaintiffs had standing, the federal courts are not the forum for litigating what amounts to a purely state law claim. They rely on *Gonzalez* and *Duncan v. Poythress,* 657 F.2d 691 (5th Cir. 1981), to get in this Court's door. But once again, the cases they cite in support of their position are inapposite. Critically, Plaintiffs point out that those cases involved situations where "Georgia *state officials* delayed or denied elections to which voters were entitled under state law." [Doc. 14 at 6] (emphasis added). And they argue that it "matters not *why* state

officials have denied voters an election… but only that the voter is in fact disenfranchised." *Id.* at 7 (emphasis original). The delay in PSC elections did not result from the actions of state officials but from the actions of a federal court in a separate case at Plaintiff McCorkle's insistence. The Secretary and General Assembly did not commit a due process violation simply by trying to remedy an election delay caused by the federal courts. *Duncan* and *Gonzalez* do not apply to the situation the State faces here.

Further, the Secretary's motion properly seeks to dismiss this case on the grounds of failure to state a claim. As this Court authorized, Tr. 7/30/2024 Hearing at 41:24–42:19, the merits argument is contained in the Secretary's response to Plaintiffs' motion for preliminary injunction, and demonstrates that there is no proper claim under the Georgia Constitution. This is yet another reason to dismiss this case.

**III.     The Secretary properly characterized the relevant facts.**

At the conclusion of their Response, Plaintiffs lob three parting critiques about the Secretary's characterization of events in the *Rose* case. None of them undermine the merits of the Secretary's motion, but they are worth briefly addressing to ensure the Court fully understands the circumstances that brought us to this point.

First, Plaintiffs claim that it was the Secretary and not the district court that cancelled the 2022 and 2024 elections for PSC. [Doc. 14 at 9]. They argue the district court merely "enjoined the Secretary from holding elections using an unlawful method…" *Id*. But this is a distinction without a difference. The practical effect of the injunction was to require cancellation of the elections because Georgia law did not provide for any other kind of election system for PSC other than statewide elections. Plaintiffs counter that this cancellation only occurred "[b]ecause the Georgia General Assembly chose not to adopt a lawful method of election." *Id.* Setting aside that the Eleventh Circuit found statewide elections were lawful, that claim overlooks a critical point that Plaintiffs make in their own brief in this case: that "the Georgia General Assembly cannot amend the constitution by passing a statute." *Id.* at 8 (citing *Kemp v. Gonzalez,* 310 Ga. 104, 113 (2020)). One of the issues litigated in the *Rose* case was the Secretary's position that the Georgia Constitution *required* statewide elections for PSC. *See, e.g., Rose v. Raffensperger,* 584 F. Supp. 3d 1278, 1290–91 (N.D. Ga. 2022). Thus, based on that interpretation, the Georgia General Assembly could not alter the method of election to provide for a new mode of election that was not statewide. For this reason, the injunction effectively cancelled all elections for PSC until it was overturned by the Eleventh Circuit. Plaintiffs' hairsplitting on this issue does not change that reality.

Plaintiffs next claim the Secretary overstated the Eleventh Circuit's holding in *Rose* and that the court did not go so far as to say there was "no violation of federal law in Georgia's method of elections for PSC." [Doc. 14, p. 9]. But that conclusion is not credible. The Eleventh Circuit found that the *Rose* plaintiffs failed to establish the first prong of the *Gingles* threshold test for finding a violation of Section 2 of the Voting Rights Act: "[W]e hold that plaintiffs have not proposed a viable remedy and have failed to satisfy *Gingles's* first precondition." *Rose v. Sec'y of State of Ga.*, 87 F. 4th 469, 479 (11th Cir. 2023). And "[w]ithout such a remedy, plaintiffs could not succeed" under Section 2 of the VRA. *Id.* at 480. Thus, at the very first step of the analysis, the Eleventh Circuit in *Rose* found no violation of any federal law.

Finally, Plaintiffs claim the Secretary misstates Plaintiff McCorkle's state of mind regarding the legislatively chosen approach to remedy the problems occasioned by her participation in the *Rose* case. [Doc. 14 at 10]. The Secretary cannot speak to the preferences of Plaintiff McCorkle, but notes that the existence of this case challenging HB 1312 suggests that she is in some way dissatisfied with it. In any event, how Plaintiff McCorkle feels about HB 1312 is irrelevant and does not affect the merits of the Secretary's Motion to Dismiss.

## CONCLUSION

For the foregoing reasons, this Court should grant the Secretary's Motion and dismiss this case in its entirety.

Respectfully submitted this 9th day of September, 2024.

    Christopher M. Carr
    Attorney General
    Georgia Bar No. 112505
    Bryan K. Webb
    Deputy Attorney General
    Georgia Bar No. 743580
    Elizabeth T. Young
    Senior Assistant Attorney General
    Georgia Bar No. 707725
    **State Law Department**
    40 Capitol Square, S.W.
    Atlanta, Georgia 30334

    */s/ Bryan P. Tyson*
    Bryan P. Tyson
    Special Assistant Attorney General
    Georgia Bar No. 515411
    btyson@theelectionlawyers.com
    Bryan F. Jacoutot
    Georgia Bar No. 668272
    bjacoutot@theelectionlawyers.com
    Diane F. LaRoss
    Georgia Bar No. 430830
    dlaross@theelectionlawyers.com
    **The Election Law Group**
    1600 Parkwood Circle
    Suite 200
    Atlanta, Georgia 30339
    678.336.7249 (phone)

    *Counsel for Defendant Secretary of State Brad Raffensperger*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned certifies that the foregoing Brief has been prepared in Book Antiqua 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan P. Tyson*
Bryan P. Tyson