IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRIONTÉ McCORKLE, GEORGIA
CONSERVATION VOTERS
EDUCATION FUND, INC., and
GEORGIA WAND EDUCATION
FUND, INC.,

          Plaintiffs,

v.

BRAD RAFFENSPERGER, in his
official capacity as Secretary of the
State of Georgia,

          Defendant.

CIVIL ACTION NO:

1:24-cv-03137-WMR

## ORDER

    This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction [Doc. 2] and Defendant's Motion to Dismiss [Doc. 12]. This case arose from previous litigation regarding the legality of the at-large method of election of members of the Georgia Public Service Commission ("PSC"). At issue in the instant case is whether House Bill 1312 ("HB 1312"), which revises term lengths of current PSC members and sets dates for future elections, comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

[Doc. 1]. After reviewing the record and filings from both parties, the Defendant's

Motion is **GRANTED** and the Plaintiffs' Motion is **DENIED AS MOOT**.

## I.     BACKGROUND

### A. Creation of the PSC

Article IV, Section I, Paragraph 1 of the Georgia Constitution provides for

the creation of the PSC, and supplies the following additional requirements:

> (a) There shall be a Public Service Commission for the regulation of utilities which shall consist of five members who shall be elected by the people. The Commissioners in office on June 30, 1983, shall serve until December 31 after the general election at which the successor of each member is elected. Thereafter, all succeeding terms of members shall be for six years. Members shall serve until their successors are elected and qualified. A chairman shall be selected by the members of the commission from its membership.
> (b) The commission shall be vested with such jurisdiction, powers, and duties as provided by law.
> (c) The filling of vacancies and manner and time of election of members of the commission shall be as provided by law.

Pertinent to the instant case, the Georgia Constitution specifies that there are

to be five members that serve for six years respectively on the PSC, but the extent

of its powers and method of election is provided by state law. *Id.* O.C.G.A. § 46-2-

1, *et seq.*, further provides that members of the PSC serve staggered terms, are

elected at large, and that members are required to live in one of the five districts

prescribed by the statute.

As of the date of this order, the five current members of the PSC are as follows: (1) Jason Shaw, Commissioner from District 1, elected in 2020 to serve a six year term which began on January 1, 2021; (2) Tim Echols, Commissioner from District 2, elected in 2016 to serve a six year term which began on January 1, 2017; (3) Fitz Johnson, Commissioner from District 3, appointed in 2021 to fill a vacancy, where the original elected member was to serve a six year term which began on January 1, 2019; (4) Lauren "Bubba" McDonald, Commissioner from District 4, elected in 2020 to serve a six year term which began on January 1, 2021; and (5) Tricia Pridemore, Commissioner from District 5, elected in 2018 to serve a six year term which began on January 1, 2019.

## B. *Rose* Injunction and Beyond

In 2020, Plaintiff McCorkle, along with three other African-American voters, sued Defendant in federal court alleging that the PSC's at-large election method violated the Voting Rights Act by "dilut[ing] black voting strength[.]" *See* Complaint, *Rose v. Raffensperger,* 1:20-cv-2921-SDG (N.D.Ga 2020) [ECF 1]. Following a bench trial, the district court enjoined the Secretary of State from implementing the at-large method in any future PSC elections on August 5, 2022. *Rose v. Raffensperger*, 619 F.Supp.3d 1241 (N.D.Ga 2022)[1].

---

[1] This decision was issued by Steven D. Grimberg, United States District Judge.

Without action from the Georgia General Assembly at that time creating a new method for elections, Defendant was forced to cancel the 2022 election in light of the injunction. [Doc. 1, ¶ 20]. In November of 2023, the Eleventh Circuit reversed the injunction granted by the district court, declaring that the lower court had made "mistakes of law." *Rose v. Sec'y*, 87 F.4th 469, 486 (11th Cir. 2023). Plaintiffs petitioned for a writ of certiorari from the United States Supreme Court in response to the unfavorable ruling from the Eleventh Circuit. *Rose v. Raffensperger*, 144 S. Ct. 2686 (2024). The Eleventh Circuit simultaneously withheld issuance of its mandate, so the district court's injunction remained in place.

On April 16, 2024, the Eleventh Circuit *sua sponte* lifted the injunction, so that the "Secretary [of state] may administer and certify PSC elections as provided under Georgia law." *Rose v. Sec'y, Ga.*, No. 22-12593, 2024 WL 1710472 at *1 (11th Cir. 2024). The United States Supreme Court denied the petition for writ of certiorari on June 24, 2024. *Rose,* 144 S. Ct. 2686. Plaintiffs moved to have the appeal be reheard by the Eleventh Circuit, but it was denied on July 10, 2024. *Rose v. Sec'y*, 107 F.4th 1272 (11th Cir. 2024). The district court made the mandate of the Eleventh Circuit its judgment on July 22, 2024. *Rose v. Raffensperger*, 1:20-cv-2921-SDG [ECF 193].

### C. Legislative Action

As the judicial proceedings continued, so too did election cycles. Though the Eleventh Circuit reversed the *Rose* injunction in November of 2023, it was unclear to legislators at the time when the mandate would be issued that would finally lift the injunction. When the candidate qualifying period began in March of 2024 for the November 2024 election, the injunction was still in place. [Doc. 1 at ¶ 23]. Defendant called off the 2024 election for PSC members to avoid issues with candidate qualification. [*Id.*].

In response to the uncertainty surrounding future elections for PSC members, the Georgia General Assembly passed legislation that re-staggered PSC elections and extended the term lengths for existing members. 2024 Ga. Laws Act 380 (HB 1312) (portions codified at O.C.G.A. § 46-2-1.1). The bill provided precisely when each term would expire and when each election would be held. *Id.* HB 1312 was signed into law by Governor Kemp and became effective on April 18, 2024. *See id*.

### D. Current Complaint

The instant case was filed on July 17, 2024, by Plaintiffs McCorkle, Georgia Conservation Voters Education Fund, Inc., and Georgia WAND Education Fund, Inc. against Defendant.  They allege that HB 1312 violates the Due Process Clause of the United States Constitution, as enforced by 42 U.S.C. § 1983. [Doc. 1 at 10].

Among other requests, Plaintiffs seek a declaratory judgment from this Court, stating that that HB 1312 violates the Due Process Clause. [*Id.*]. Plaintiffs also filed a Motion for Preliminary Injunction, seeking to both prohibit Defendant from enforcing HB 1312 in future elections and to require that Defendant conduct elections "in accordance with Georgia law." [Doc. 2].

Defendants, in lieu of an answer, filed a Motion to Dismiss the Complaint. [Doc. 12]. Defendants argue that Plaintiffs have failed to state a federal claim that would confer jurisdiction to a federal court, and that even if the claim is federal, Plaintiffs lack standing to pursue it. [Doc. 12-1 at 1-2]. For the reasons discussed herein, Defendants' Motion to Dismiss is **GRANTED** and the Plaintiffs' Motion for Preliminary Injunction is **DENIED AS MOOT**.

## II.    LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party may move to dismiss an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth . . . ." *Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). Next, a court must "accept[ ]the facts alleged in the

complaint as true, drawing all reasonable inferences in the plaintiff's favor."

*Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

## III. DISCUSSION

### A. Motion to Dismiss

Plaintiffs have failed to state a claim upon which relief can be granted, and for the reasons discussed herein, Defendant's Motion to Dismiss is **GRANTED.**

#### i. Plaintiffs fail to state a claim that confers federal subject matter jurisdiction.

To adjudicate the case, this Court must have proper subject matter jurisdiction over the claim. Federal courts are courts of limited jurisdiction and have an obligation to inquire into their subject matter jurisdiction. *See Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1279–80 (11th Cir. 2001). Per 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: "federal-question jurisdiction" over cases that "aris[e] under federal law[,]" and "diversity jurisdiction" over cases where there is a diversity of citizenship between parties and the amount in controversy exceeds $75,000. *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 438 (2019). Plaintiffs' sole claim for relief is based upon an alleged violation of the United States Constitution via § 1983, so any subject-matter jurisdiction this Court could have would be under federal-question.

Plaintiffs weakly attempt to confer jurisdiction by asserting that because HB 1312 allegedly violates the Georgia Constitution, it "thereby violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution[.]" [Doc. 1 at ¶ 35]. Though difficult to discern from the Complaint, it appears Plaintiffs are attempting to insinuate that because the Georgia Constitution specifies the election process and term lengths for PSC members, a Georgia statute cannot override those constitutional requirements. [*Id.* at ¶¶1-2; 9-10].

"'The functional structure embodied in the Constitution, the nature of the federal court system and the limitations inherent in the concepts both of limited federal jurisdiction and of the remedy afforded by § 1983' operate to restrict federal relief in the state election context." *Id.* (quoting *Gamza v. Aguirre*, 619 F.2d 449, 452 (5th Cir. 1980)). Further, a "bedrock" principle of federalism is that "needless decisions of state law should be avoided as both a matter of comity and to promote justice between the parties." *Ameritox, Ltd. v. Millennium Labs., Inc*., 803 F.3d 518, 540 (11th Cir. 2015) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Because "state courts, not federal courts, should be the final arbitrators of state law," "concerns regarding… comity favor dismissal." *Baggett v. First Nat'l Bank*, 117 F.3d 1342, 1353 (11th Cir. 1997); *Ameritox*, 803 F.3d at 541.

If this Court were to hear this case, it would be required to interpret how the Georgia Constitution interacts with Georgia statutes, something that as a matter of comity ought to be left to Georgia courts to determine. Though Plaintiffs raise concerns about Due Process, resolution of this case would require extensive analysis of the Georgia Constitution rather than tackling issues of federal law. Resting on its duty to uphold such principles of federalism, this Court declines to exercise jurisdiction over the Plaintiffs' claim because it believes that Georgia courts are best suited to be the "final arbitrators" of this state constitutional challenge. *Id.*

### ii.  Plaintiffs do not have standing to raise such a claim.

Even if Plaintiffs have sufficiently alleged a claim that confers jurisdiction, they still must each have standing to raise the claim in federal court. "Article III of the Constitution limits the jurisdiction of federal courts to adjudicating actual 'Cases' and 'Controversies.'" *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021). To establish that a case or controversy exists, a plaintiff must satisfy the standing doctrine, which "requires that a plaintiff have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (internal quotation marks omitted). Organization plaintiffs must also establish that either its members would have "standing to sue in their own right" or that the organization

itself suffered an injury. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). *See Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1350–51 (11th Cir. 2009).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Id.*

Plaintiff McCorkle does not have standing to raise her claim as she has failed to establish an injury in fact. She has failed to articulate a concrete, particularized injury, and instead alleges little more than a generalized grievance, "undifferentiated and common to all members of the public." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 575 (1992).

Plaintiff McCorkle complains that she has suffered the "loss of her right to vote in elections…that would have occurred but not for [Defendant's] administration of the unconstitutional House Bill 1312." [Doc. 14 at 2].[2] She has claimed "only harm to [her] and every citizen's interest in proper application of the Constitution and laws" and seeks relief that "no more directly and tangibly benefits

---

[2] Not really. The delay in her right to vote was caused by the misguided lawsuit that she previously filed and has now lost. Plaintiff McCorkle seemingly had no problem with a delayed election when it suited her interests.

[her] than it does the public at large[.]" *Lujan,* 504 U.S. at 573-74. Further, she "cannot explain how [her] interest in compliance with state election laws is different from that of any other person." *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020).

As Defendant notes in his Reply Brief, Plaintiff McCorkle's alleged injury concerns not "the *ability* to vote but rather the precise *timing* of the election." [Doc. 16 at 3 (emphasis in original)]. Though "denial…of the right to vote" could be the sort of concrete and particularized harm a plaintiff could have standing to raise, it is not so raised here. *Johnson v. Governor of Fla.*, 405 F.3d 1214, 1229 (11th Cir. 2005). HB 1312, which provides the dates of elections for all five members, evidences an intent to hold an election, not to prevent one. *See* O.C.G.A. § 46-2-1.1(b)(2) ("A state-wide special election for Public Service Commission District 2 shall be held on the same day as the 2025 municipal general election, the Tuesday following the first Monday in November, 2025."). The objective of HB1312 is to (temporarily) allow already elected PSC members to maintain their positions until an election occurs, not to evade an election or otherwise prevent a vote. Thus, Plaintiff McCorkle has failed to establish her injury in fact and does not have standing to assert her claim.

Likewise, the organizational Plaintiffs cannot establish standing because there is no allegation of harm to any members nor allegation of direct harm from Defendant. Plaintiffs Georgia Conservation Voters Education Fund, Inc. and Georgia WAND Education Fund, Inc. merely state that their respective organizations engage in "work involv[ing] the Public Service Commission." [Doc. 1 at ¶¶ 6-7]. The Complaint does not allege harm from Defendant to the organizations, but simply implies a general connection between HB1312 and the kind of work the organizations are involved with.

Both organizational Plaintiffs failed to identify a single member of their respective organizations; this proves fatal to associational standing based upon a member's standing to sue in their own right. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1249 (11th Cir. 2020). Organizational plaintiffs may also establish standing based on their own injuries, but the Complaint is devoid of allegations of harm to the organizations by the Defendant. Therefore, the organizational Plaintiffs in the instant case lack standing to assert this claim.

### iii. Plaintiffs fail to assert a constitutional violation protected by the Due Process Clause.

Notwithstanding justiciability concerns, Plaintiffs' claim fails as it does not allege a constitutional deprivation; but, even if it constituted such an impediment on the right to vote, HB 1312 survives strict scrutiny review. "The first inquiry in

any section 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140 (1979). Indeed, the Constitution of the United States "protects the rights of all qualified citizens to vote, in state as well as federal elections." *Reynolds v. Sims,* 377 U.S. 533, 554 (1964). However, "[o]nly in extraordinary circumstances will a challenge to a state election rise to the level of a constitutional deprivation." *Curry v. Baker,* 802 F.2d 1302, 1314 (11th Cir. 1986). The Due Process Clause of the Fourteenth Amendment, thus, is only offended if the election violation "reaches the point of patent and fundamental unfairness." *Id.* at 1315.

In guiding its analysis of what constitutes such unfairness, the Eleventh Circuit considers whether the local procedure was "attended by the intention to discriminate… or motivated by a desire to subvert the right of voters[.]" *Id.* (quoting *Gamza*, 619 F.2d at 454). Indeed, "federal courts closely scrutinize state laws whose very design infringes on the rights of voters, [but] federal courts will not intervene to… supervise the administrative details of a local election." *Id.* at 1314. Administrative details include, as relevant to HB1312, the date of the local election.

HB 1312, which serves to briefly extend term lengths and reschedule elections for PSC members, does not reach the point of patent and fundamental unfairness because there is no evidence of intent or motivation to disenfranchise

13

Georgia voters. Plaintiffs' reliance on *Duncan v. Poythress* is misplaced. In that case, the Fifth Circuit[3] held that it was fundamentally unfair and "constitutionally impermissible" for public officials to intentionally withhold a special election to "fill the seats of government through the power of appointment." *Duncan v. Poythress*, 657 F.2d 691, 704 (5th Cir. 1981). In the instant case, Defendant did not withhold an election nor attempt to appoint members to the PSC; rather, HB 1312 merely extended term lengths to prevent vacancies in anticipation of future, set elections. It is likely that a state statute that serves to reschedule, but not cancel, elections in light of a prior injunction – as opposed to an intentional conspiracy to completely disenfranchise voters – does not constitute a deprivation of the right to vote.

Even if HB1312 deprived Plaintiffs of a constitutional right, it would still sufficiently further a compelling state interest. The right to vote is considered a fundamental right, and "any alleged infringement of the right…must be carefully and meticulously scrutinized." *Reynolds,* 377 U.S. 533 at 562. To pass muster under strict scrutiny, the alleged deprivation must be narrowly tailored to "further a compelling state interest." *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 633 (1969). In the voting context, the Eleventh Circuit has recognized that "the more a challenged law burdens the right to vote, the stricter the scrutiny."

---

[3] Fifth Circuit decisions prior to October 1, 1981, are adopted as binding precedent on the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

*Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1319 (11th Cir. 2019). However, all the factors surrounding the burden are considered, as the analysis is based on the totality of the circumstances. *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 671 (2021).

In consideration of all of the circumstances surrounding HB 1312, this Court concludes that HB 1312 is adequately and narrowly tailored to further a compelling state interest. The State of Georgia has a compelling interest in avoiding rapid, simultaneous turnover of all PSC members. Per Georgia law, PSC members must serve staggered terms, and the drafters of that provision did not intend for a mass upheaval of electing all members at once. Maintaining stability on the PSC is certainly a compelling state interest.

Furthermore, HB 1312 only burdens the right to vote insofar as it delays an election, but it does not serve to otherwise burden the ability of an individual to vote. It was narrowly tailored to address the specific uncertainty surrounding the upcoming election and the requisite procedure. Importantly, the burden imposed on voters is merely a delay and does not disenfranchise Georgia voters. HB 1312, even if subject to strict scrutiny, does not unconstitutionally limit the exercise of Georgia citizens' right to vote.

Therefore, whether due to lack of jurisdiction, lack of standing, or failure to sufficiently state a constitutional deprivation, Defendant's Motion to Dismiss is GRANTED and Plaintiffs' claim is DISMISSED.

### B. Preliminary Injunction

Plaintiffs' Motion for Preliminary Injunction is DENIED AS MOOT given the dismissal of the case because the Court does not have jurisdiction. However, even if this Court had jurisdiction over Plaintiffs' claim, it would still deny the injunction because, contrary to Plaintiffs' assertion, it would not serve the public interest to force Defendant to hold an election.

A plaintiff seeking a preliminary injunction must demonstrate that: (1) there is a substantial likelihood of success on the merits; (2) it will suffer irreparable injury if relief is not granted; (3) the threatened injury outweighs any harm the requested relief would inflict on the non- moving party; and (4) entry of relief would serve the public interest. *See Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1271 (11th Cir. 2020). It is difficult for this Court to cognize how Plaintiffs can claim that it would benefit the public to force an election for PSC members, and that the delay from HB 1312 is unconstitutional, when that very election had already been delayed twice because of the actions of at least one of the Plaintiffs involved in this case.

The present situation was not of the Defendant or the State of Georgia's making; it came about as the result of an aggressive position taken by Plaintiff McCorkle and others that the election scheme in place for PSC was illegal, which the Eleventh Circuit found it was not. *See Rose v. Sec'y, Ga.*, No. 22-12593, 2024 WL 1710472. If Plaintiffs were truly concerned about "voters…hav[ing] an opportunity to vote for Public Service Commissioners…sooner", it is unclear why Plaintiff McCorkle's earlier action was to take a position that would prevent two subsequent elections from taking place, in 2023 and 2024 respectively. [Doc. 2 at 9].

HB 1312 was the Georgia General Assembly's solution to preserve its policy decision that PSC members must serve staggered terms, so as to maintain continuity on the Commission. The bill extends term lengths only to comport with subsequent elections, which will afford Georgia citizens the ability to vote without completely dismantling the existing staggered system. Inherently, the passage of HB 1312 was to serve the public interest, so granting an injunction in violation of that bill on the same purported grounds would be absurd.

## IV.    CONCLUSION

For the reasons discussed herein, Defendant's Motion to Dismiss [Doc. 12] is **GRANTED**. Accordingly, because Plaintiff's claim is dismissed, Plaintiffs'

Preliminary Injunction [Doc. 2] is **DENIED AS MOOT**. The Clerk of Court is

**DIRECTED** to close this case.

      **IT IS SO ORDERED**, this 13th day of January, 2025.


                                       _____
                                       WILLIAM M. RAY, II
                                       UNITED STATES DISTRICT JUDGE